IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SEANDI A. FORBES,

    Plaintiff,

vs.                                    Case No. 4:14cv101-MW/CAS

GOODWILL INDUSTRIES,

    Defendants.

_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff initiated this case on February 28, 2014, by filing a pro se complaint, doc. 1, and a motion for leave to proceed in forma pauperis, doc. 2.  Good cause having been shown, the in forma pauperis motion is granted and the Clerk of Court shall file the complaint without requiring payment of the filing fee.

Plaintiff's complaint is filed on a civil rights complaint form for proceeding under 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983.  Doc. 1.  However, beginning on page three, which should have presented the "statement of facts" had Plaintiff continued using the complaint form, Plaintiff inserts a photocopy of an Intake Fact Sheet, doc. 1 at 3.  That page is not legible.  Several additional pages follow which are also not legible and which should not have been included.  Doc. 1 at 3-9.  Plaintiff attached pages

concerning Employee Counseling Notices from Goodwill, descriptions of violations, and Introduction to the mission of Goodwill, and information on Goodwill's grievance procedures. *Id.* at 10-23. Those pages are unnecessary and are not part of Plaintiff's factual allegations.

Plaintiff again used the complaint form beginning on page 24 of the complaint, although Plaintiff does not provide allegations which reveal a basis for a civil rights action. Plaintiff states that he overheard a supervisor indicate he "could cause one of those bales to fall on" Plaintiff and kill him. Doc. 1 at 24. Plaintiff heard another person, Michael Williams, say for six months that he would start a fight with Plaintiff and that one day he brought a firearm to work. Plaintiff contends that sometimes when they worked together, he "would charge at" Plaintiff, "demonstrating to other people how he would rush [Plaintiff] from behind." *Id.* Plaintiff reports that one day Williams and Leon Cooper walked by his apartment, and Plaintiff heard someone say "Here comes Mike with his gun out to shoot you in the back." *Id.* Plaintiff said he never told him where he lived. *Id.* Later than night, Plaintiff said he heard sounds like something was hitting his bedroom window, and Plaintiff heard voices talking about how to break in and "bust him." *Id.* at 25. Plaintiff also heard sounds of an attempt to break into his apartment through the sliding glass door, and then he heard a motorcycle speed off. *Id.* On the following day, Plaintiff heard voices outside say to him that as soon as he filed cases with the Court, when he walked outside the courthouse, he would "be shot in the head." *Id.*

Plaintiff contends that as he worked for Goodwill Industries, he heard "supervisors and managers saying things" which led Plaintiff to feel that his "life was in

danger." *Id.* at 26. Plaintiff contends he was "verbally abused by both management and employees." *Id.* Plaintiff also states that while "living at Hope Community on Pensacola St.," a family moved next door and he heard the teenage son say that one night, he went into Plaintiff's room through the connecting bathroom and pointed a gun at Plaintiff's head while he was asleep. *Id.*

Plaintiff alleges that at another time, he was sitting on the hood of his car and saw a black Chevy Tahoe parked by a fence. *Id.* at 28. Plaintiff thought it was suspicious, so he retrieved his camera and began taking pictures. *Id.* The man driving the Tahoe drove over the Plaintiff and questioned him, and then told Plaintiff he was suspicious of Plaintiff. Plaintiff was also suspicious, so he took another picture of the man in his car. *Id.* Plaintiff said the man followed him to his apartment where an argument ensued. *Id.* at 27-28. Plaintiff contends the man told Plaintiff he needed some common sense and "he could give [Plaintiff] some with a bullet in [his] head." *Id.* Plaintiff makes other assertions about cleaning milk off the hood of his neighbor's car, *Id.* at 27-28, that Mr. Paul from Goodwill told Plaintiff his case was discredited, *Id.* at 29, that Carlos and Robert have sex with Plaintiff's girlfriend, *Id.* at 30, that an employee at Goodwill, Copland, accused Plaintiff of "knowing some woman" and of committing a murder in front of two other Goodwill employees. *Id.* at 31. Plaintiff reports that he heard another supervisor "ask someone of how to shoot [Plaintiff] in the back of [his] head." *Id.* at 32. Plaintiff reports another incident about loading a trailer with Gaylords, *Id.* at 32, and that several persons would "plan among themselves of how to start a fight with" Plaintiff. *Id.* at 33. They would practice shooting Plaintiff in the head, or talk about shooting him off Goodwill property or kidnapping Plaintiff's children. *Id.* Plaintiff says

that he noticed "someone approach [him] from behind to see how close they could get to" him.  *Id.* at 36.  Plaintiff further advises that he knows of a secret organization of assassins that operate in the United States and has learned the names of people in that group.  *Id.* at 37.  He also has information on their tactics, motives, equipment, and goals.  *Id.*  Plaintiff believes that he and his family have been targeted by the organization and his life is in danger.  *Id.* at 37-38.

Plaintiff requests that a "life time restraining order be placed on all parties and their families and friends, as well as the entire Goodwill organization."  *Id.* at 34.  Plaintiff requests that they "stay away from [his] entire family and children" and not come "within a five mile range for the rest of their natural life."  *Id.*  Plaintiff requests the "right to press charges aginst [sic] the Goodwill organization if any un-natural death happen to [Plaintiff] or any family member."  *Id.*  Plaintiff also seeks $380,000,000.00 in damages from Goodwill Industries.  *Id.* at 39.

Federal law permits a United States District Court to dismiss a case filed in forma pauperis, if it is satisfied that the action is frivolous or malicious.  The Supreme Court has recognized two types of cases which may be dismissed, sua sponte, pursuant to 28 U.S.C. § 1915(d).  <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  The first class are "claim(s) based on an indisputably meritless legal theory," and the second class contains "claims whose factual contentions are clearly baseless."  *Id.*  This case lacks both an arguable basis in law and is clearly removed from reality.  <u>Sultenfuss v. Snow</u>, 894 F.2d 1277 (11th Cir. 1990), *citing* <u>Neitzke</u>.  Furthermore, this Court cannot provide the relief requested by Plaintiff.  Dismissal of the complaint remains appropriate.

Accordingly, it is **ORDERED** that Plaintiff's motion to proceed *in forma pauperis*, doc. 4, be **GRANTED**.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that this action be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on March 17, 2014.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**